IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RANDALL HAMPTON, (AIS #226420) *
*
Plaintiff,
*
V. * 2:06-CV-400-MHT
*
PRISON HEALTH CARE SERVICES,
*
Defendant.
*

**SUPPLEMENTAL AFFIDAVIT OF TAHIR SIDDIQ, M.D.**

**BEFORE ME,** _______________, a notary public in and for said County and State, personally appeared **TAHIR SIDDIQ, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Tahir Siddiq. I am a medical doctor and am over twenty-one years of age. I am personally familiar with all of the facts set forth in this affidavit. I have been licensed as a physician in Alabama since 1996, and have been board certified in internal medicine since 1996. I have served as the Medical Director for Bullock County Correctional Facility in Union Springs, Alabama, since 1997. Since November 3, 2003, my employment at Bullock County Correctional Facility has been with Prison Health Services, Inc. ("PHS"), the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

It is my understanding that on November 21, 2006, the Court entered an order in this matter requesting that I provide a detailed explanation of the treatment provided to Mr. Hampton as relevant to his claims in the above matter. The Court has also requested that I interpret the

DEFENDANT'S EXHIBIT G

Plaintiff's medical records as relevant to his claims. The following statements are provided pursuant to Court order and in supplement to my first Affidavit pending before the Court.

To the best of my understanding, Mr. Hamilton claims:

(1) that he has seizures and that I do not help him "most of the time" (See Complaint);
(2) that unknown medical staff personnel at Bullock County Correctional Facility have caused him to suffer unspecified physical injury (Id.);
(3) that unknown medical staff ignored Mr. Hampton during an emergency situation on an unspecified date (Id.);
(4) that unknown medical staff at Bullock left Mr. Hampton alone while he was having a seizure on an unspecified date (See Amended Complaint dated August 16, 2006);
(5) that I have refused to give him appropriate medication for his seizure condition (Id.); and
(6) that he did not receive appropriate medical care in April of 2006 subsequent to suffering a head laceration. (See Second Amended Complaint dated October 6, 2006).

As discussed in my original Affidavit, Mr. Hampton developed a seizure disorder in 1995 secondary to a closed head injury. (See Exhibit "A"). Mr. Hampton began his incarceration at Bullock County Correctional Facility in February 2003, approximately eight years later. Since that time, Mr. Hampton's condition for seizures[1] has been maintained with Tegretol[2] and Phenobarbital[3]. These medications are indicated for Mr. Hampton's treatment, and have been adjusted as warranted by his changing condition. (See Exhibit "B"). In order to insure that these medications remain at therapeutic levels, Mr. Hampton is provided routine lab work. (See Exhibit "C"). Mr. Hampton is provided routine lab work as part of his treatment regimen in Bullock's chronic care clinic. (See Exhibit "D"). Mr. Hampton has also been afforded numerous diagnostic evaluations, including a CT scan of the brain, an x-ray of the left knee, lumbar and

---

[1] When Mr Hampton presents to the healthcare with complaints for seizure he often states that his "legs have gone out."

[2] Tegretol is an anticonvulsant used in the treatment of seizure disorders, including certain types of epilepsy. It is also prescribed for trigeminal neuralgia (severe pain in the jaws) and pain in the tongue and throat.

[3] Phenobarbital, a barbiturate, is used to control epilepsy (seizures) and as a sedative to relieve anxiety.

cervical spine x-rays, an x-ray to the left elbow and two x-rays of the skull. All of these examinations were normal. (See Exhibit "E").

Each time Mr. Hampton has presented to the infirmary with complaints of seizure activity or leg weakness he has been provided appropriate nursing evaluation and medical treatment. There is no indication in this inmate's medical records that any of PHS' medical staff have caused him to suffer physical injury.

Moreover, while Mr. Hampton claims that he has been ignored in an emergency situation, he has not specified which "situation" he is referring to. Mr. Hampton also claims that an unknown staff member left him alone without medical attention while he was having a seizure. Again, however, there is no date or time indicated for the event he describes.

With regard to Mr. Hampton's allegation that I failed to provide him with appropriate treatment in April of 2006 subsequent to striking his head on the floor of Bullock's kitchen, there is simply no indication in Mr. Hampton's medical chart that he presented for treatment subsequent to a fall in Bullock's kitchen in April of 2006. There is no indication that I placed fifteen stitches in Mr. Hampton's head in April 2006 as he claims; and I certainly have no memory of providing Mr. Hampton with stitches in April of 2006.[4]

Based on my review of Mr. Hampton's medical records, and on my personal knowledge of the treatment provided to him, it is my medical opinion that all of his medical conditions and complaints have been evaluated in a timely fashion at Bullock County Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion. At all times, he has received appropriate medical treatment for his health conditions from me and the other PHS personnel at Bullock. At no time has he been denied any needed medical treatment. In

---

[4] A review of this inmate's medical records does indicate, however, that I sutured a 1 cm. laceration on Mr. Hampton's scalp on April 8, 2003 (three years earlier). (See Exhibit "F").

other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate.

At no time have I or any of the PHS staff at Bullock County Correctional Facility denied Mr. Hampton any needed medical treatment, nor have we ever acted with deliberate indifference to any serious medical need of Hampton. At all times, Hampton's known medical complaints and conditions have been addressed as promptly as possible under the circumstances."

Further affiant sayith not.

[signature] MD 12/4/6

TAHIR SIDDIQ, M.D.

STATE OF ALABAMA )

COUNTY OF Bullock )

I, Louis D. Boyd Jr, a Notary Public in and for said State and County, hereby certify that TAHIR SIDDIQ, M.D. who being known to me and who being duly sworn, and whose name is signed to the foregoing document, acknowledged before me on this date that being first informed of the contents of said document, having read the same, and understanding its purpose and effect, voluntarily executed the same upon the above-stated date.

SWORN TO and SUBSCRIBED BEFORE ME on this the 5th day of December, 2006.

[signature]

NOTARY PUBLIC

My Commission Expires: 6-7-2010

(NOTARIAL SEAL)